UNITED STATE DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
HARRISBURG DIVISION

| | |
|---|---|
| PL Capital, LLC; PL Capital Advisors, LLC; Goodbody/PL Capital, LLC; Financial Edge Fund, L.P.; Financial Edge-Strategic Fund, L.P.; Goodbody/PL Capital, L.P.; PL Capital/Focused Fund, L.P.; Richard J. Lashley; and John W. Palmer, on behalf of shareholders of Orrstown Financial Services, Inc, <br><br> *Plaintiffs,* <br><br> v. <br><br> Joel Zullinger, Thomas Quinn, Jeffrey Coy, Anthony Ceddia, Mark Keller, Andrea Pugh, Gregory Rosenberry, Glenn Snoke, Floyd Stoner, and John Ward, <br><br> *Defendants,* <br><br> and <br><br> Orrstown Financial Services, Inc, <br><br> *Nominal Party.* | Civil Action No. ___ |

## VERIFIED COMPLAINT

## INTRODUCTION

1.     This is a shareholder derivative action on behalf of nominal party

Orrstown Financial Services, Inc. ("Orrstown" or the "Company") brought to

redress the wrongful adoption and discriminatory application of amendments to certain director qualification by-laws. Plaintiffs John Palmer and Richard Lashley, through PL Capital, LLC, PL Capital Advisors, LLC, Goodbody/PL Capital, LLC, Financial Edge Fund, L.P., Financial Edge-Strategic Fund, L.P., Goodbody/PL Capital, L.P., PL Capital/Focused Fund, L.P. (collectively, the "PL Capital Group," and with Palmer and Lashley, the "Plaintiffs"), own 6.9% of Orrstown's common stock, rendering the PL Capital Group Orrstown's largest shareholder. The complaint seeks relief against the Orrstown Board of Directors – defendants Thomas Quinn, Joel Zullinger, Jeffrey Coy, Anthony Ceddia, Mark Keller, Andrea Pugh, Gregory Rosenberry, Glenn Snoke, Floyd Stoner and John Ward (collectively, the "Orrstown Board" or the "Board") – for the Orrstown Board's breach of its fiduciary duties owed to the Company and for the Board's fundamentally unfair deprivation of, and tortious interference with, Plaintiffs' and other investors' core shareholder rights.

2.     Orrstown is a company in crisis. In 2011, Orrstown's regulators, the Federal Reserve Bank of Philadelphia (the "FRB") and the Pennsylvania Department of Banking, Bureau of Commercial Institutions (the "Department of Banking" and, collectively with the FRB, the "Regulators"), issued a Joint Report of Examination finding, among other things, that the Company's wholly owned subsidiary Orrstown Bank (the "Bank") had, among other things, "engaged in

unsafe or unsound banking practices or violations of law or policy." On March 22, 2012 the Company and the Bank jointly entered into a Consent Order with the Department of Banking and a written agreement with the FRB that required Orrstown and the Bank to adopt plans to, among other things, strengthen oversight of management and operations, reduce the level of classified assets, improve credit risk management practices, maintain adequate loan loss allowances, maintain sufficient capital, and revise loan underwriting and credit administration policies. The regulatory agreements contained 36 pages of findings and requirements, a stinging rebuke by the Regulators.

3.     The Orrstown and Bank boards (which contain identical members) are also under regulatory scrutiny for their role in the Company's crisis. The March 22, 2012 regulatory agreements with the FRB and the Department of Banking required the Bank to, among other things, (a) retain an independent consultant to evaluate "each existing director and senior officer to determine whether these individuals possess the ability, experience, and other qualifications required to perform present and anticipated duties, including adherence to the Bank's established policies and practices, and restoration and maintenance of the Bank in a safe and sound condition," (b) take actions to "strengthen Board oversight of the management and operations of the Bank, with full responsibility for the approval of sound policies and objectives and for supervision of all of the

Bank's activities, consistent with the role and expertise commonly expected for directors of banks of comparable size" and (c) "improve the Bank's condition and maintain effective control over, and supervision of, the Bank's major operations and activities," including its credit risk management and lending administration.

4.     During the next six months, four senior executive officers of Orrstown and/or the Bank resigned, including the Chief Operating Officer, Chief Financial Officer, Chief Credit Officer and the SVP in charge of the Special Assets Group. While those members of senior management were casualties of the Regulators' stinging rebuke of the Board and senior management, only one incumbent Board director, former Orrstown CEO Kenneth Shoemaker, announced that he would not stand for re-election.  All of the other directors of Orrstown remain in place today.

5.     Further, in May 2012, another prominent Orrstown shareholder, Southeastern Pennsylvania Transportation Authority ("SEPTA"), filed a class action complaint in this Court on behalf of the Company's shareholders, alleging that the Orrstown Board violated federal securities laws by issuing false and misleading statements about the Company's financial health.  These statements, SEPTA alleges, caused Orrstown's stock to trade at artificially inflated prices in 2009 and 2010, which allowed Orrstown to raise $40 million in a secondary offering at $27.00 per share in March 2010.  Since that March 2010 capital raise, Orrstown's stock has dropped over 70% to below $8.00 per share, a loss of over

$150 million in market capitalization, and the Company has written off nearly $90 million in bad loans, in large part as a result of the Orrstown Board's poor oversight of the Company's lending and underwriting programs.

6.     Despite Orrstown's dismal operating performance, plunging stock price and the Regulators' insistence that the Orrstown Board improve its efforts and ability to properly supervise and effectively govern the Company and the Bank, the Orrstown Board reacted to the PL Capital Group's investment in the Company by taking immediate and drastic measures to further entrench and enrich its current members by adopting draconian director qualifications that reduce the pool of potential board candidates to only those who live within 50 miles of the Company's headquarters and do not serve on the board of another banking institution, while grandfathering themselves from their own restrictions.

7.     Specifically, within one month of PL Capital Group's initial 13D filing that made public Plaintiffs' investment in the Company, the Orrstown Board announced that it had amended its bylaws on November 19, 2012 to include certain director eligibility requirements which, among other things, (a) require Directors to maintain a permanent primary residence within 50 miles of the Company's headquarters in Shippensburg, PA and (b) preclude a director from serving on the Orrstown Board if they serve as a management official of another depository company (the "Entrenchment Bylaws").  Coming a mere 28 days after the PL

Capital Group's October 22, 2012 filing, it is clear these Entrenchment Bylaws were enacted to exclude the PL Capital Group from nominating either of its principals, who live in New Jersey (Mr. Lashley) and Illinois (Mr. Palmer) and each of whom serve on the board of directors of other financial institutions – or any other highly-qualified nominee the PL Capital Group (or any other shareholder) may seek to nominate who happens to live more than 50 miles away from the Company's headquarters in Shippensburg, PA.  This restriction not only unfairly deprives the Company of qualified and professional members on its Board, but also precludes the PL Capital Group and all other Orrstown shareholders from exercising their right to vote for the candidate of their choosing.

8.     After taking into consideration the Entrenchment Bylaws and the Boards' refusal to withdraw such amendments, the PL Capital Group on December 28, 2012, filed a notice of intent to nominate Lashley as a director at the April 17, 2013 annual meeting of shareholders.  At a time when Orrstown is losing money and subject to intense scrutiny from its Regulators, the Orrstown Board should be recruiting highly qualified nominees such as Lashley, regardless of geographic residence and service on another bank or bank holding company board (assuming that service meets all applicable regulatory restrictions on management interlocks; a topic fully addressed by existing banking regulations).

9.     Upon information and belief, the Orrstown Board enacted these Entrenchment Bylaws for the sole purpose to exclude the PL Capital Group and Lashley from exercising their shareholder rights to seek election to the Orrstown Board.  In doing so, the Orrstown Board members breached their fiduciary duties owed to the Company by depriving the Company of highly qualified, professional, competent and independent directors and its investors of their ability to exercise core shareholder rights to nominate director candidates of their choice.  By this action, Plaintiffs seek relief for Orrstown as a result of the Board's disloyalty and its members' breach of their fiduciary duties.   Plaintiffs further seek relief from the Board for its fundamentally unfair disenfranchisement of Plaintiffs' shareholder rights.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because plaintiffs and defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs, as (a) Plaintiffs' shares in Orrstown exceed $75,000; (b) the value of a seat on the Orrstown Board exceeds $75,000; and (c) the harm to the Company in excluding professional, competent Board members exceeds $75,000.

11.     Defendants named herein have sufficient minimum contacts with this District and the State of Pennsylvania so as to render the exercise of jurisdiction permissible under traditional notions of fair play and substantial justice.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1331(b), as Orrstown maintains its principal place of business in this District and the acts and practices complained of herein occurred in this District.

## PARTIES

13.     Plaintiff Financial Edge Fund, L.P. is a Delaware limited partnership. Its sole general partner is PL Capital, LLC.  As of December 28, 2012, Financial Edge Fund, L.P. owned 294,614 shares of the Company's stock.

14.     Plaintiff Financial Edge-Strategic Fund, L.P. is a Delaware limited partnership.  Its sole general partner is PL Capital, LLC.  As of December 28, 2012, Financial Edge-Strategic Fund, L.P. owned 96,462 shares of the Company's stock.

15.     Plaintiff Goodbody/PL Capital, L.P. is a Delaware limited partnership. Its sole general partner is Goodbody/PL Capital, LLC.  As of December 28, 2012, Goodbody/PL Capital, L.P. owns 105,954 shares of the Company's stock.

16.     Plaintiff PL Capital/Focused Fund, L.P. is a Delaware limited partnership.  Its sole general partner is PL Capital, LLC.  As of December 28,

2012, PL Capital/Focused Fund, L.P. owned 58,792 shares of the Company's stock.

17.     Plaintiff PL Capital Advisors, LLC is a Delaware limited liability company whose principal place of business is located in Illinois.  Its sole members are John W. Palmer and Richard J. Lashley.  PL Capital Advisors, LLC is the investment advisor for Financial Edge Fund, L.P., Financial Edge-Strategic Fund, L.P., PL Capital/Focused Fund, L.P. and Goodbody/PL Capital, L.P.

18.     Plaintiff PL Capital, LLC is a Delaware limited liability company comprised of two members, John W. Palmer and Richard J. Lashley.  PL Capital, LLC is the general partner of Financial Edge Fund, L.P., Financial Edge-Strategic Fund, L.P. and PL Capital/Focused Fund, L.P.  It is an investment firm specializing in the banking industry.

19.     Plaintiff Goodbody/PL Capital, LLC is a Delaware limited liability company comprised of two members, John W. Palmer and Richard J. Lashley.  Goodbody/PL Capital, LLC is the general partner of Goodbody/PL Capital, L.P.  It is an investment firm specializing in the banking industry.

20.     Collectively, as of December 28, 2012, the PL Capital Group owned 555,822 shares of the Company's common stock, representing an ownership stake of 6.9% in Orrstown.

21.    Plaintiff Palmer formerly practiced as a Certified Public Accountant and is currently a member of the American Institute of Certified Public Accountants.   Prior to forming PL Capital, LLC in 1996, Palmer worked for KPMG, an international public accounting firm, specializing as an auditor and strategic advisor to companies in the commercial banking, consumer finance, and mortgage banking industries.   Palmer currently serves on the board of a publicly traded $1.2 billion asset federal savings bank based in the Midwest and a publicly traded $1.2 billion asset thrift holding company based in the Great Plains.   Palmer is a citizen of Illinois.

22.    Plaintiff Lashley, PL Capital's highly qualified nominee, is a Certified Public Accountant (New Jersey-status inactive) who has been involved in the banking industry in several different capacities since he graduated with an M.B.A. in accounting in 1984.   Prior to forming PL Capital, LLC with Palmer in 1996, Lashley worked for twelve years for KPMG, an international public accounting firm, providing professional auditing and accounting services to banks and thrifts from 1984 to 1993.   From 1994 to 1996, Lashley served as a Director in KPMG's Capital Strategies Group, a national practice providing merger and acquisition financial advisory services to thrifts, banks, mortgage companies and other financial services companies.   While at KPMG, Lashley also served for 2 years as the Assistant to the Chairman of the AICPA Savings Institutions Committee in

Washington, D.C., and 2 years writing technical accounting literature for KPMG professionals firmwide as part of KPMG's National Savings Institutions Practice. Lashley has formerly served on various bank boards throughout the U.S. since 1999 and is currently a member of the board of directors of a publicly traded bank holding company.   Because of his accounting and financial expertise and experience, Lashley is designated as a "financial expert" for purposes of service on bank audit committees.  Lashley is a citizen of New Jersey.

23.   Since its founding in 1996, Lashley and Palmer have managed PL Capital, LLC, an investment firm that invests solely in banks and thrifts, such as Orrstown.  The PL Capital Group currently manages approximately $135 million. Because Palmer and Lashley are the managing members of PL Capital, LLC (which is the general partner of Financial Edge Fund, L.P., Financial Edge-Strategic Fund, L.P. and  PL Capital/Focused Fund, L.P.) and the managing members of Goodbody/PL Capital, LLC (which is the general partner of Goodbody/PL Capital, L.P.), they have the power to direct the affairs of each member of the PL Capital Group, including the voting and disposition of shares of Common Stock held in the name of each member of the PL Capital Group.

24.   Nominal party Orrstown Financial Services, Inc. is a Pennsylvania corporation whose principal place of business is located in Shippensburg, Pennsylvania.   Orrstown is the holding company whose primary activity is

managing its wholly owned subsidiary Orrstown Bank, as over 99% of the consolidated assets of Orrstown are held by the Bank.   Upon information and belief, as is typical of one-bank holding companies, each of the Company's Board members are also board members of the Bank.   The Company has announced that it will hold its annual meeting for the election of shareholders on April 17, 2013. Because the Board has opposed Plaintiffs' requests to vacate the Entrenchment Bylaws, the Board should be treated as a Defendant for purposes of determining diversity jurisdiction.

25.   Defendant Joel Zullinger is the Chairperson of the Orrstown Board. Zullinger has been a Director for the Company since 1981, and is an attorney operating a private practice based in Chambersurg, Pennsylvania.   Zullinger is a citizen of Pennsylvania.

26.   Defendant Thomas Quinn is the President and Chief Executive Officer of the Company and is a member of the Orrstown Board.   Quinn joined the Company in 2009 following his departure from Fifth Third Bank in South Florida. Prior to his tenure with Fifth Third Bank, Quinn was employed for more than thirteen years in Citibank's upstate New York office located in Plattsburgh, New York.   Upon information and belief, Quinn was not a resident of Pennsylvania living within 50 miles of Shippensburg at the time he was hired and yet the

Orrstown Board presumably deemed him qualified to serve as the Company's CEO and member of the Orrstown Board.  Quinn is now a citizen of Pennsylvania.

27.     Jeffrey Coy is the Vice Chairman of the Board of Directors of the Company.  Coy has been a Director for the Company since 1984.  Coy formerly was employed as a Commissioner on the Pennsylvania Gaming Control Board. Coy is a citizen of Pennsylvania.

28.     Anthony Ceddia is a member of the Orrstown Board.  Ceddia has been a Director for the Company since 1996.  Ceddia has retired as President of Shippensburg University, whose students, according to the University's website, represent "more than 21 states and 20 different countries."  Ceddia is a citizen of Pennsylvania.

29.     Mark Keller is a member of the Orrstown Board.  Keller has been a member of the Orrstown Board since 2008.  Keller has served as a Representative to the Pennsylvania General Assembly since 2004.  Upon information and belief, Keller voted in favor of the Entrenchment Bylaws, effectively endorsing the notion that Pennsylvania citizens living more than 50 miles from Shippensburg are not qualified to serve as a director of the Company.   Keller is a citizen of Pennsylvania.

30.     Andrea Pugh is a member of Orrstown Board.  Pugh has been a Director for the Company since 1996.  Pugh is the president and sole member of a pharmacy consulting business.  Pugh is a citizen of Pennsylvania.

31.     Gregory Rosenberry is a member of the Orrstown Board.  Rosenberry has been a member of the Orrstown Board since 1997.  Rosenberry is a president and partner in a privately-owned timber harvesting and wholesale business. Rosenberry is a citizen of Pennsylvania.

32.     Glenn Snoke is a member of the Orrstown Board.  Snoke has been a member of the Orrstown Board since 1999. Snoke is president of Snoke's Excavating & Paving, Inc., based in Walnut Bottom, Pennsylvania.  Snoke is a citizen of Pennsylvania.

33.     Floyd Stoner is a member of the Orrstown Board.  Stoner has been a Director for the Company since 2012.  Stoner is a retired lobbyist for the American Bankers Association.  Stoner is a citizen of Virginia and yet the Orrstown Board presumably deemed him qualified to serve on the Board.

34.     John Ward is a member of the Orrstown Board.  Ward has been a Director for the Company since 1999.  Ward was a mechanical engineer with Carlisle Syntec, Inc. and Carlisle Tire and Wheel, and formerly served as Chief Clerk of Cumberland County, Pennsylvania.  Ward is a citizen of Pennsylvania.

35.     Unlike Lashley, no incumbent director on the Orrstown Board is a current or former CPA or has any direct relevant experience in public accounting. Nor has any incumbent director served as a principal accounting or financial officer of any company, much less a publicly traded bank or bank holding company.

## FACTS

### PL Capital, LLC Invests In The Company.

36.     PL Capital, LLC is an investment firm that specializes solely in the banking industry, periodically exercising its shareholder rights by nominating and voting in favor of new director candidates opposed by company managements and boards.  PL Capital, LLC focuses its investments on publicly traded banks and thrifts with total assets ranging from $500 million to $3 billion, such as Orrstown, which has $1.27 billion in assets.  The PL Capital Group considers itself a long term investor and rarely trades in and out of its investments. Lashley and Palmer, through PL Capital, LLC and its affiliates, direct all of the PL Capital Group's investments in the Company.

37.     The PL Capital Group began investing in Orrstown on February 3 2012, when Financial Edge Fund, L.P. purchased 6,868 shares of the Company's Common Stock.  Financial Edge Strategic Fund, L.P. (8,000 shares), Goodbody/PL Capital, L.P. (3,000 shares), and PL Capital/Focused Fund, L.P. (4,000 shares)

made additional investments in the Company shortly thereafter on February 7, 2012. Additional purchases (but no sales) followed throughout 2012. As of December 28, 2012, the PL Capital Group has collectively purchased 555,822 shares of Orrstown's Common Stock, worth approximately $5.3 million and reflecting an ownership interest in the Company of 6.9%. As a result of these investments, the PL Capital Group is Orrstown's largest shareholder.

38.    As of the Company's most recent proxy statement, dated March 16, 2012, the Orrstown Board members (who remain on the Board today) collectively owned 170,069 shares of the Company, or 2.1% of the Company's common stock (excluding stock options). This is one-third of the share ownership held by the PL Capital Group.

**Orrstown Suffers Financial Crisis And Regulatory Scrutiny.**

39.    While under the stewardship of the incumbent Board, the Company has incurred significant losses during the past three years. The Company's public filings reveal that it has provided for $115 million in loan losses and charged off $89 million of bad loans, leading to a cumulative net loss over that period of $55 million.

40.    These dramatic losses have caught the attention of Orrstown's Regulators. In March 2011, the Regulators issued a Joint Report of Examination finding, among other things, that the Bank had "engaged in unsafe or unsound

banking practices or violations of law or policy." The Regulators' findings eventually resulted in a series of written agreements between Orrstown, the Bank and the Regulators and increased regulatory scrutiny and oversight of the Company and the Bank. As disclosed in the Company's Form 8-K filed with the Securities Exchange Commission ("SEC") on March 22, 2012, the Orrstown and Bank bsoard entered into written agreements of indefinite duration with both the FRB and the Department of Banking pursuant to which the boards were required to take certain actions to strengthen the oversight of management and operation of the Company and the Bank. These actions included, but were not limited to, the following:

A.   To retain an independent consultant to develop an analysis and assessment of the Bank's management and directors and deliver a report that evaluates "each existing director and senior officer to determine whether these individuals possess the ability, experience, and other qualifications required to perform present and anticipated duties, including adherence to the Bank's established policies and practices, and restoration and maintenance of the Bank in a safe and sound condition."

B.   To submit to the FRB a "written plan to strengthen board oversight of the management and operations of the Bank."

C.   To take actions to "improve the Bank's condition and maintain effective control over, and supervision of, the Bank's major operations and activities, including but not limited to, credit risk management, lending and credit administration, asset quality, liquidity, audit, capital and earnings."

D.     To take actions to "improve the information and reports that will be regularly reviewed by the board of directors and its committees in their oversight of the operations and management of the Bank" and to maintain "adequate and complete minutes of all board and committee meetings."

E.     To submit a written strategic plan that addresses "identification of areas where the board of directors will seek to improve the Bank's operating performance."

41.     The Orrstown Board further agreed that it would not declare or pay any dividend without prior approval from both the FRB and the Department of Banking, and that it would not incur or increase debt or redeem any outstanding shares without the FRB's permission.

42.     The Company has experienced significant quarterly losses in five of the last six quarters, beginning with a $10.6 million loss in the second quarter of 2011.  In a third quarter 2011 Form 8-K filing, the Company was forced to suspend its $0.23 quarterly dividend when it announced that the FRB had refused to approve Orrstown's payment of a cash quarterly dividend.  It has not paid a dividend since that time.

43.     In addition to these financial and regulatory challenges, the Orrstown Board has faced pressure from the Company's shareholders challenging the Board's performance.  In May 2012, prominent shareholder SEPTA filed a class action complaint in this Court on behalf of certain classes of shareholders, alleging that the Board misled investors by repeatedly making public assurances that the

Company's financial performance was "exceptional" and that its capital position was "robust." *See SEPTA v. Orrstown Fin. Svcs, Inc.*, No. 1:12-cv-993-SHR (M.D. Pa. May 25, 2012).

44.     Tension between the Company's shareholders and the Orrstown Board is not limited to the *SEPTA* class action complaint.  At the 2012 annual shareholder's meeting held on May 1, 2012, Orrstown shareholders approved a shareholder proposal directing the Board to amend certain provisions of the Company's articles of incorporation and bylaws to require simple majority voting on shareholder actions. (The Company's bylaws provided, then and now, that certain actions required supermajority approval by the Company's shareholders). Shareholders voted for this proposal despite the fact that the Board recommended that shareholders vote against the proposal and engaged a proxy solicitor, at a cost of $40,000, to solicit votes opposing the proposal.  The shareholder proposal was endorsed by Institutional Shareholder Services ("ISS"), the nation's leading independent proxy advisory firm.  Although the proposal passed by nearly half a million votes, and had received ISS's strong support, the Orrstown Board has ignored the shareholders' direction and failed to amend the bylaws as recommended in the proposal.

**The Board Makes A Number Of Changes To The Company's Bylaws, But Do Not Enact Any Director Qualification Amendments.**

45.     In August 2012, Orrstown filed a Form 8-K, notifying its shareholders and the public that the Board had adopted several amendments to the Company's bylaws.  Specifically, the Orrstown Board amended or deleted eight separate bylaws, involving four separate sections, in its August 2012 revisions.

46.     Despite its substantial revisions and amendments to the Company's bylaws in August 2012 (including changes to Article III, which governs the powers, conduct and removal of Board members), the Board did not add any eligibility restrictions to serve as a member of the Orrstown Board.

**Despite The Board's Poor Performance, The Company Amends Its Bylaws To Exclude PL Capital's Lashley.**

47.     Although both the Company's shareholders and Regulators have expressed their belief that the Orrstown Board has failed to properly manage the Company and meet the challenges faced by the Company in the past, the Board reacted to the PL Capital Group's investment in the Company by immediately amending its bylaws to further entrench the current members of the Board and to exclude highly qualified nominees from serving on the Board merely because of their place of residence or service on other bank or bank holding company boards.

48.     Specifically, on November 19, 2012, the Orrstown Board amended Article III, Section 3 of its bylaws to add new director eligibility requirements for

future candidates seeking election to the Board (the "Entrenchment Bylaws"). These new eligibility requirements impose the following restrictions, among others, on anyone attempting to stand for election as director of the Company:

> A.   "Each Director of the corporation must, at all times, maintain a permanent primary residence within a 50 miles radius of the corporation's administrative office located at 77 East King Street, Shippensburg, Pennsylvania." (Entrenchment Bylaw Section 3-12)

> B.    "A person is not eligible to serve as a Director of the corporation if he or she is a 'management official' of another 'depository institution' or 'depository holding company' as those terms are defined in 12 C.F.R. § 212.2 of the Regulations of the Board of Governors of the Federal Reserve System.  If elected as a Director of the corporation, a person may not thereafter serve or agree to serve a as a management official of another depository institution or depository holding company unless and until his or her term as a Director of the corporation has expired."  (Entrenchment Bylaw Section 3-14)

49.   Residency restrictions such as this have been rejected by bank regulators.  As an example, the Office of Thrift Supervision ("OTS"), a federal regulator that merged into the Office of Comptroller of the Currency ("OCC") in 2011,  rejected a similar proposed amendment to a New Jersey bank's bylaws that restricted the eligibility of the bank's directors to New Jersey residents.  *See* OTS Order No. 2010-01 (January 14, 2010).   The OTS stated that an eligibility restriction "diminished the property rights that stockholders otherwise obtain when they acquire stock," was inconsistent "with affording stockholders and members a

fair opportunity to nominate candidates for boards of directors" and "inappropriately entrenched management." Importantly, the OTS concluded that geographic restrictions like that adopted by the Board harm not only shareholders who are prevented from exercising their voting rights, but also the corporation itself. OTS observed that geographic restrictions "prevent a board from bringing on board members with particular expertise necessary to deal with a business crisis," and as a public statement that only residents of the favored locale may serve on a corporation's board, such limitations "may deter people with the necessary experience or capital from coming forward to offer to assist [the corporation] at a time when it would need their assistance."

50.    In addition, a review of the bylaws governing Orrstown's peer group of banks (as defined in the Company's own 2012 proxy materials filed with the SEC) reveals that *none* of Orrstown's peer banks have adopted similar restrictions.

**The Entrenchment Bylaws Were Amended Specifically To Exclude Lashley
And For No Good Reason.**

51.    On October 22, 2012, the PL Capital Group filed a Schedule 13D statement with the SEC, notifying the Orrstown Board that it purchased 6.4% of the Company's common stock because PL Capital Group believed the stock is undervalued and that PL Capital intended to "monitor the performance of the Company of the actions of the Company's management and board, and where needed, to assert PL Capital Group's stockholder rights."

52.     Less than one month after the PL Capital Group filed its Schedule 13D statement, the Orrstown Board enacted the Entrenchment Bylaws.

53.     No legitimate business purpose supports the Orrstown Board's sudden and restrictive adoption of mandatory director qualifications, a mere 28 days after the PL Capital Group filed its initial 13D, when none had existed previously throughout the Company's and Bank's history.

54.     The Board's enactment of the Entrenchment Bylaws constituted self-dealing because Board members, upon information and belief, do not want to risk giving up their generous compensation and the perks and prestige of being a director of a publicly traded bank holding company.   The Orrstown Board members received an average of $76,974 in total compensation in 2011, with a median total compensation of $75,922.

55.     Upon information and belief, the Orrstown Board did not enact the Entrenchment Bylaws in good faith but rather to further their own personal interests at the expense of the Company's.

56.     The Orrstown Board breached its fiduciary duty to the Company by adopting bylaw restrictions that inappropriately exclude Lashley and other potential highly qualified nominees from serving on the Board.  The Entrenchment Bylaws are inconsistent with the basic rights of all shareholders to nominate shareholders and vote for such nominees if they so choose and deprive the

Company and its shareholders of the right to have the most qualified directors on the Board, regardless of where they happen to live or if they serve on another financial institution's board of directors.

57.     Rather, upon information and belief, the Orrstown Board rushed to amend its bylaws to include the residency and experience restrictions for the primary purpose of prohibiting the PL Capital Group's preferred candidate, Lashley, from serving on the Orrstown Board.

**Plaintiffs Face Irreparable Harm If The Entrenchment Bylaws Are Enforced.**

58.     Neither Palmer nor Lashley reside within 50 miles of Shippensburg, Pennsylvania.   Accordingly, if applied to Palmer or Lashley, the residency restriction bylaw would render them ineligible for election at the upcoming annual meeting for the election of directors.  Indeed, the residency requirement excludes even individuals residing in nearby commercial centers Philadelphia, Pittsburgh, Baltimore and metropolitan New York from serving on the Orrstown Board.

59.     Likewise, both Palmer and Lashley currently serve as directors for other banking institutions.   Accordingly, if applied to Palmer or Lashley, this restriction would render them ineligible for election at the upcoming annual meeting for the election of directors.

60.     The Orrstown Board's Entrenchment Bylaws advance no legitimate business purpose, but instead prevent the Company from having the most qualified

and effective board members that its current problems demand.  The Board's lack of good faith is evident on the face of the Entrenchment Bylaws themselves. Although Amended Bylaw Section 3-12 provides that it became effective immediately upon the amended bylaws' passage, the Board members ensured that the residency requirement "shall not apply to existing directors immediately prior thereto."   There is no business purpose whatsoever in imposing upon future nominees to the Orrstown Board restrictive residency and other requirements but exempting current directors from such requirements.   Instead, adoption of a grandfather provision betrays a conscious entrenchment and self-dealing purpose animating the adoption of the new Entrenchment Bylaws.

61.    The Orrstown Board's exclusion of Lashley substantially and irreparably harms the Company and deprives Plaintiffs of valuable shareholder and property rights.  As a CPA (New Jersey-status inactive) with years of experience advising and auditing banking institutions, both in his time with an international accounting firm and then on behalf of PL Capital LLC, Lashley has far more relevant banking, financial, and accounting experience than any other current Orrstown Board member.

62.    Indeed, while Lashley has spent the past twenty-eight years as a CPA auditing and advising banks, a financial advisor involved in bank mergers with over $1.0 billion in transaction value, the co-manager of a successful investment

firm with over $135 million currently invested in banks and a board member on eight separate banking institutions  since 1999 (both publicly-traded and privately-held), the current composition of the Orrstown Board includes the president of a local excavating and paving company, a member of a pharmacy consulting business with five-figure annual revenues, and the general partner of a local timber harvesting company (and notably, no current or former CPAs or financial executives with banking experience).

63.    Plaintiffs do not question the aptitude of the current Orrstown Board members in their respective fields, but none have the financial and accounting training, expertise and experience Lashley has accumulated in his almost three decades of advising and investing in banking institutions.  Lashley's skills and experience are particularly needed by the Company under the present challenging circumstances.

64.    The Entrenchment Bylaws are unnecessary because federal banking regulations on "management interlocks" already more than adequately protect Orrstown and the Bank from the potential conflicts of interest inherent in the service of directors who serve on the board of more than one bank or bank holding company.  These regulations place well defined and reasonable restrictions on service on large bank boards (to avoid concentration of interlocking power in one or more large banking organizations) and for service on bank boards that operate in

overlapping geographic areas (to foster competition).    Upon information and belief, Lashley currently qualifies to serve on Orrstown's and the Bank's board of directors under these "management interlock" rules.  Indeed, PL Capital Principal Palmer currently sits on two boards and in prior years, Lashley has served on as many as three bank boards at one time, all while meeting the "management interlock" regulations.

**PL Capital, LLC Demands That The Board Revise The Entrenchment Bylaws.**

65.    Frustrated by the Orrstown Board's transparent attempt to preclude the PL Capital Group from exercising its shareholder rights, Palmer and Lashley contacted Defendants Zullinger and Quinn shortly after the Board's November 19 filing and asked the Orrstown Board to revise the Company's bylaws to remove the residency and experience restrictions before the advance notice deadline for submission of shareholder nominees to the Board expired.  A copy of Palmer and Lashley's December 3, 2012 letter is attached hereto as Exhibit A.

66.    Having received no response from the Board, Zullinger or Quinn, and in an attempt to avoid litigation, Lashley wrote to Quinn a second time on December 13, 2012, seeking to discuss Plaintiffs' concerns with the Entrenchment Bylaws.  A copy of Lashley's December 13, 2012 email is attached hereto as Exhibit B.   This second attempted communication prompted a series of conversations between Plaintiffs' counsel and Defendants' counsel, at the

conclusion of which Quinn and his counsel finally agreed to make themselves available for a telephone call with Plaintiffs.

67.     In a telephone call between the Company, its legal advisors, Palmer and Lashley on December 26, 2012, Quinn stated that the Board had no intention to revise the Entrenchment Bylaws.

68.     In response, Plaintiffs insisted that Quinn verify whether his positions of not intending to withdraw the Entrenchment Bylaws was supported by the entire Orrstown Board.   On December 28, 2012, the Company's counsel contacted Plaintiffs' counsel to indicate that the Board was in agreement with Quinn and refused to withdraw the Entrenchment Bylaws.

69.     The Company's own financial results, however, belie the Board's claim (as stated by Orrstown's representatives to Palmer and Lashley on the December 26 conference call) that directors must reside in Orrstown's market area to be armed with knowledge of the local market and improve the quality of the lending function.   This is demonstrably false.   Other than one new director, Defendant Stoner, who joined the Orrstown Board in 2012, all of the other incumbent *local* directors have presided during the past three years (through the quarter ended September 30, 2012) – a period in which Orrstown announced $115 million in loan losses and charged off $89 million of bad loans, leading to a

cumulative net loss over that period of $55 million and the imposition of regulatory orders by the Regulators.

70.     Indeed, had the Company adopted the Entrenchment Bylaws from Orrstown's outset, several current members of the Orrstown Board could not be elected as directors.  Defendant Quinn joined the Orrstown Board in 2009 from Fifth Third Bank, where Quinn resided in Florida.  Prior to his term with Fifth Third Bank, Quinn resided in upstate New York for more than thirteen years. Likewise, Defendant Stoner – who joined the Orrstown Board in 2012 – resides in Alexandria, Virginia, where he has served as a lobbyist for over 26 years.  Thus, by its own actions, the Orrstown Board has made clear it does not view residency within central Pennsylvania as essential to serving as the CEO of the Company and the Bank, much less as an effective member of the Orrstown Board.

71.     The Company has announced that it will hold its annual meeting for the election of shareholders on April 17, 2013.  The Company's shareholders were required to submit their nominations for candidates to serve on the Orrstown Board by December 31, 2012.   The PL Capital Group has met this deadline, as shareholder Palmer submitted his nomination of Lashley to serve on the Orrstown Board by December 31, 2012.

72.     If the Orrstown Board does not stay application of its Entrenchment Bylaws prior to the April 17, 2013 annual shareholder meeting, the Company will

be irreparably harmed as it will be deprived of access to the most qualified professional and competent members to vote onto the Board.  Moreover, the PL Capital Group and all other shareholders of the Company will likewise be irreparably harmed, as shareholders will be deprived of their right to nominate and vote for director candidates that reside outside of central Pennsylvania or that currently serve as a director or officer for another banking institution.

## COUNT I

### (Declaratory Judgment)

### (Brought Derivatively On Behalf Of The Company)

73.     Plaintiffs repeat and reallege paragraphs 1-72 of the Complaint as if fully set forth herein.

74.     The Entrenchment Bylaws are inequitable and unreasonable per se and their application should be enjoined permanently.

75.     On their face, the Entrenchment Bylaws prohibit any individual who does not reside within 50 miles of the Company's headquarters from serving as a director of this public company, while including discriminatory features exempting current directors from this residency requirement.

76.     The Entrenchment Bylaws further prohibit any individual who serves as a director or officer for another banking institution from becoming a member of the Orrstown Board.

77.     These Entrenchment Bylaws render it impossible for the PL Capital Group, the Company's largest shareholder, and any other Orrstown shareholder, to nominate their preferred candidate for election as director of the Board.   The Entrenchment Bylaws purport to remove from a significant shareholder for no justifiable business reason the ability to nominate anyone to serve as a director of the Company, a right which every Orrstown shareholder (including the PL Capital Group) enjoyed prior to the enactment of the Entrenchment Bylaws, and a right to which the PL Capital Group were entitled when they purchased their shares in the Company.

78.     Plaintiffs have no adequate remedy at law.

## COUNT II

### (Breach Of Fiduciary Duties)

### (Brought Derivatively On Behalf Of The Company)

79.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-78 of the Complaint as if fully set forth herein.

80.     The Plaintiffs are currently shareholders in the Company and were shareholders in the Company at the time the Entrenchment Bylaws were enacted.

81.     This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

82.     Each Orrstown Board member Defendant owes, and at all relevant times has owed, fiduciary duties of loyalty and care to the Company.

83.     The Defendants breached these duties by enacting the Entrenchment Bylaws.

84.     The Defendants' enactment of the Entrenchment Bylaws have injured the Company by depriving it of competent and experienced directors on the Orrstown Board.

85.     The Defendants' enactment of the Entrenchment Bylaws have further injured the Company by precluding its shareholders from exercising their shareholder rights to nominate a candidate for director of their choice, thus depriving the Company of the input of its shareholders and reducing the value of investors' shares in Orrstown.

86.     Upon information and belief, the Entrenchment Bylaws were enacted solely or primarily to preserve the encumbency of the Orrstown Board members against a challenge from Lashley and/or will have that effect if applied in the manner advocated by the Defendants.

87.     Although Plaintiffs have repeatedly asked Defendants to revise the Entrenchment Bylaws and omit the residency and experience restrictions on director eligibility, Defendants have refused to withdraw the Entrenchment Bylaws.

88.     No formal demand on the Orrstown Board was made prior to the bringing of this derivative complaint because the 90-day demand period would expire immediately prior to the annual shareholders' election meeting and provide no time for PL Capital to obtain clearance of their proxy materials from the SEC and then solicit proxies for the April 17, 2013 annual meeting of the shareholders.

89.     The Company will be irreparably harmed if the Entrenchment Bylaws are enforced to preclude Lashley and any otherwise-eligible nominees from seeking election to the Orrstown Board.

90.     The Company has no adequate remedy at law.

## COUNT III

### (Tortious Interference With Shareholder Rights)

### (Brought Derivatively On Behalf Of The Company)

91.     Plaintiffs repeat and reallege the allegations of Paragraphs 1-90 of the Complaint as if fully set forth herein.

92.     The Plaintiffs are currently shareholders in the Company and were shareholders in the Company at the time the Entrenchment Bylaws were enacted.

93.     This action is not a collusive one to confer jurisdiction that the court would otherwise lack.

94.     Each shareholder holds rights to participate in the governance of the Company, including the right to nominate a candidate for Board director of the shareholder's choosing.

95.     Defendants intentionally interfered with these shareholder rights by enacting the Entrenchment Bylaws.

96.     Defendants' enactment of the Entrenchment Bylaws was not privileged or justified.

97.     Defendants' intentional interference with the shareholders' rights have injured the Company by reducing the pool of eligible directors and prohibiting shareholders from electing the director of their choice, thereby devaluing the Company's stock.

98.     Although Plaintiffs have repeatedly asked Defendants to revise the Entrenchment Bylaws and omit the residency and experience restrictions on director eligibility, Defendants have refused to withdraw the Entrenchment Bylaws.

99.     No formal demand on the Orrstown Board was made prior to the bringing of this derivative complaint because the 90-day demand period would expire immediately prior to the annual shareholders' election meeting and provide no time for PL Capital to obtain clearance of their proxy materials from the SEC and then solicit proxies for the April 17, 2013 annual meeting of the shareholders.

## COUNT IV

### (Disenfranchisement)

### (Brought By Plaintiffs Individually)

100.   Plaintiffs repeat and reallege the allegations of Paragraphs 1-99 of the Complaint as if fully set forth herein.

101.   Each Orrstown shareholder, including Plaintiffs, is entitled to exercise democratic rights to vote in shareholder elections for a candidate of their preference to serve on the Orrstown Board.

102.   The Defendants deprived Plaintiffs by enacting the Entrenchment Bylaws.

103.   The Defendants' enactment of the Entrenchment Bylaws have injured Plaintiffs by precluding Plaintiffs from exercising their shareholder rights to nominate a candidate for director of their choice.

104.   The Defendants' enactment of the Entrenchment Bylaws have further injured the Company and Plaintiffs by depriving the Company of competent and experienced management on the Orrstown Board.

105.   Upon information and belief, the Entrenchment Bylaws were enacted solely or primarily to preserve the encumbency of the Orrstown Board members against a challenge from Lashley and/or will have that effect if applied in the manner advocated by the Defendants.

106.   The enactment of the Entrenchment Bylaws is fundamentally unfair to Plaintiffs.

107.   Plaintiffs will be irreparably harmed if the Entrenchment Bylaws are enforced to preclude Lashley and any otherwise-eligible nominees from seeking election to the Orrstown Board.

108.   Plaintiffs have no adequate remedy at law and will be deprived of their shareholder rights to nominate and vote in support of a director candidate of their choosing.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court enter judgment in their favor and enter an Order:

(a)     declaring and decreeing that the Entrenchment Bylaws are invalid as a matter of law;

(b)     preliminarily and permanently enjoining the application and enforcement of the Entrenchment Bylaws;

(c)     preliminarily and permanently enjoining the application and enforcement of the Entrenchment Bylaws to any attempt by the PL Capital Group or any other shareholder to nominate one or more individuals as candidates for director, including Lashley;

(d)     declaring and decreeing that the action of the Orrstown Board in adopting and enacting the Entrenchment Bylaws constituted a breach of fiduciary duty;

(e)     awarding Plaintiffs and the Company their damages incurred as a result of the Defendants' actions;

(f)     awarding Plaintiffs their costs and expenses incurred in bringing and prosecuting this action, including their attorneys' fees based on, *inter alia,* any corporate benefit conferred by this litigation; and

(g) awarding Plaintiffs and the Company such other and further relief as may be just and equitable.

January 7, 2013

/s/    Jack Hartman
Jack M. Hartman
Pa ID No. 21902
PERSUN & HEIM, P.C.
1700 Bent Creek Blvd.
Suite 160
Mechanicsburg, PA  17055-0659
(717) 620-2440 (P)
(717) 620-2442 (F)

Of Counsel:

Phillip M. Goldberg
Jonathan W. Garlough
FOLEY & LARDNER LLP
321 North Clark St.
Suite 2800
Chicago, IL  60654
(312) 832-4500 (P)
(312) 832-4700 (F)

## **VERIFICATION**

I, Richard J. Lashley, HEREBY DECLARE under penalty of perjury that I am over the age of eighteen and otherwise competent to testify, and that the allegations in the foregoing Verified Complaint are, to the best of my recollection and belief, true and accurate.

_Richard J. Lashley_

Richard J. Lashley

1-7-13

Date

State of New Jersey
County of MORRis

_Maureen E Schmeltz_

MAUREEN E SCHMELTZ
NOTARY PUBLIC OF NEW JERSEY
My Commission Expires August 7, 2013